IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

MAHTAUB MOORE,                                                    Jury Trial Demanded

    *Plaintiff,*

v.                                                               Case No:  **26 - 599**

JONATHON MOORE
134 Three Mile Harbor Road
East Hampton, NY 11937,

LESLIE SPOLTORE
13 Foxview Circle
Hockessin, DE 19707,

OBERMAYER, Et al.
1500 Market Street
Suite 3400
Philadelphia, PA 19102,

WILLIAM GREEN
5722 Kennett Pike
Wilmington, DE 19807

JOHN DOES 1-3

    *Defendants.*


**COMPLAINT FOR DECLARATORY JUDGMENT, INJUNCTIVE RELIEF,
DAMAGES, AND STAY OF STATE COURT PROCEEDINGS RELATED TO
DEPARTMENT OF JUSTICE FORFEITURE SUIT**

**(First Amendment Retaliation, Witness Retaliation/Tampering, Unconstitutional
Protective/Gag Order; 42 U.S.C. § 1983; Declaratory Judgment Act)**

1.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343, and 28 U.S.C. §§ 2201–2202. This action arises under the First Amendment and involves federal questions concerning witness retaliation, obstruction of federal investigations, and fraud against

1

the United States.

2. Venue is proper in the District of Delaware pursuant to 28 U.S.C. § 1391.

**Parties**

3. Plaintiff Mahtaub Moore is a Delaware resident, a witness in current suits and investigations IRS and FBI in ongoing international money laundering and DOD fraud forfeiture actions. Plaintiff is a policy analyst, and a public figure who regularly appears on podcasts and writes on human rights and national security, with a focus on Iraqi Kurdistan, Iran, and China.

4. Defendant Jonathon Moore is the opposing party in the underlying state court proceedings and a named defendant and co-defendant in multiple federal actions alleging violations of the U.S. Patriot Act, Anti-Terrorism Act, money-laundering with associate Mansour Barzani, and other KDP political party members, and Barzani family members and co-conspirators and contractors named in the recent Department of Justice Forfeiture case filed April 22, 2026, alleging Foreign Corrupt Practices Act violations (Exhibit A). This court holds personal jurisdiction over Defendant Moore.

5. Defendants Leslie Spoltore and William Green, operating in Delaware, are representatives and firm personnel who represented Defendant in state court proceedings, possessed direct knowledge of Plaintiff's status as a federal witness and documentation of Defendant Moore's decades long association with Masrour Barzani and Haval Dosky. The current DOJ Action names Defendant Moore's associate Mansour Barzani alleging violations of the FCPA defrauding the DOD of $700 million.

2

6. **John Doe Defendants 1–3** are presently unidentified individuals who participated in the events giving rise to this action:

a. **John Doe #1 (State Actor)** is an individual whose identity is whose identity is unknown to Plaintiff but who is believed to be a judge, court official, clerk, or other person acting under color of state law who participated in the issuance, upholding, or enforcement of the unconstitutional protective/gag order and fees order, communicated *ex parte* with Defendants and unconstitutionally asserted jurisdiction over matters which are federal question including the current DOJ Action filed April 22, 2026.

b. John Doe #2 and John Doe #3 are individuals and associated entities whose identities are currently unknown, but who aided and abetted the retaliation, vexatious litigation, and suppression of Plaintiff's protected speech and federal witness cooperation and Plaintiff's compliance with federal subpoenas.

**Factual Allegations**

7. This action challenges an overbroad protective/gag order and related fees order entered in underlying state court proceedings overlapping current federal litigation and investigations by U.S. governmental agencies, that unconstitutionally restrain Plaintiff's protected speech under the First Amendment of the U.S., including Plaintiff's analysis and commentary in global publications and the media regarding corruption, foreign transnational espionage, human rights, and fraud against U.S. government agencies, and cooperation with federal law enforcement.

8. Plaintiff is a federal witness and has provided information to the IRS and FBI regarding

3

international money laundering, Defense of Department fraud, and related national security matters since September 2023. Defendants conspired to intimidate and coerce Plaintiff's testimony to federal agencies since 2023 and obstruct Plaintiff's compliance with two federal subpoenas in active cases in Southern District of *New York, Iraq Telecom Limited v. Korek (Barzani)* and *Revend et al., v. Barzani,* Moore in the District of Columbia. (Exhibit B and C).

9. Defendants knew Plaintiff was, and remains, a federal witness cooperating with federal authorities concerning matters involving alleged corruption, sanctions-related conduct, foreign influence activity, and fraud implicating agencies of the United States Government. Despite such knowledge, Defendants, their representatives, associated law firms, and agents improperly disclosed, circulated, and weaponized confidential settlement and compromise communications protected under Federal Rule of Evidence 408 ("FRE 408") by attaching such communications as exhibits in state-court proceedings, disseminating them to third parties, and utilizing those materials as instruments of coercion, retaliation, intimidation, and reputational harm against Plaintiff.

10. Specifically, Defendants and their associates sought to pressure Plaintiff to retract, alter, or modify statements and information previously provided to federal agencies, including the Federal Bureau of Investigation and the Internal Revenue Service. Such communications and meetings occurred, inter alia, in September 2023 in Wilmington, Delaware and in November 2024 in Washington, D.C. Thereafter, Defendants and associated parties improperly circulated and referenced FRE 408 communications in correspondence directed to third parties, including communications involving Isabella Theocharous and Carter-Ruck, and further employed such materials in July 2025, August 2025, and continuing thereafter as part of vexatious threats and retaliatory conduct aimed at suppressing Plaintiff's protected speech and discouraging cooperation with federal authorities.

11. On June 23, 2025, following the June 18, 2025, hearing, and prior to the last day of hearings on June 30, 2025, testimony involving Defendant Moore and Defendant Spoltore, Defendant Green publicly posted on social media that "between a lawyer's duty of candor to the tribunal and a lawyer's duty to not throw the client under the bus" there existed a "large grey area." The statement was highly inappropriate under the circumstances and constituted a public acknowledgment suggesting awareness of conflicting interests, potential exposure, or complicit conduct involving Defendants Moore, Spoltore, Obermayer, and Barzani in matters overlapping the underlying proceedings and related investigations (Exhibit D). Given Defendant Green's prior service as a civil servant within the Office of the Attorney General in the state, such public statements were particularly outrageous, inappropriate, and inconsistent with the heightened ethical obligations owed by attorneys and former government officials to preserve the integrity of judicial proceedings and public confidence in the administration of justice (Exhibit D).

12. Federal Rule of Evidence 408 prohibits the use of compromise negotiations and

5

settlement communications "either to prove or disprove the validity or amount of a disputed claim" or to improperly prejudice a party through disclosure of protected negotiations. Fed. R. Evid. 408(a). Courts have repeatedly recognized that misuse of protected settlement communications for harassment, retaliation, coercion, or reputational injury undermines both federal policy favoring candid settlement discussions and broader constitutional protections. See *Pierce v. F.R. Tripler & Co.*, 955 F.2d 820, 827 (2d Cir. 1992) (recognizing Rule 408 exists to encourage "the compromise and settlement of disputes" free from improper later use); *Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*, 332 F.3d 976, 980–81 (6th Cir. 2003) (recognizing strong federal interest in protecting confidentiality of settlement negotiations). Defendants further continued to exploit information obtained through investigations, discovery, and lawful federal subpoenas — including subpoenas not opposed by Defendant Moore — for purposes unrelated to legitimate litigation objectives and instead to harm, intimidate, and retaliate against Plaintiff. The challenged state-court protective and gag order has thus operated not as a narrowly tailored judicial safeguard, but as a continuing instrument of coercion and intimidation designed to chill Plaintiff's First Amendment rights, suppress protected commentary, journalism, and interfere with Plaintiff's participation in matters of substantial federal concern.

13. These matters are directly connected to the April 22, 2026, Department of Justice civil forfeiture action (DOJ Action) (*United States v. Real Property Located in Beverly Hills, California*, No. 2:26-cv-04255), which details widespread fraud, money laundering, and corruption, defrauding the Department of Defense and Defense Logistics Agency in an amount over $700 million and used the schemed proceeds to acquire U.S. real estate, luxury vehicles, and other real estate structures.

6

14. Defendant Jonathon Moore has been named in *Revend et al. v. Masrour Barzani et al.*, case no. 1:24-cv-00278 (D.D.C.), *Jamil v. Barzani, Moore, Kittila*, in the Southern District of New York and other related federal litigation. This complaint and the DOJ Action have overlapping witnesses and material evidence. Related defendants in this complaint and the DOJ Action are overlapping and include a massive arbitration award involving related parties. The Eastern District of Pennsylvania in *Iraq Telecom Limited, v. Barzani, et al.*, against Defendants' clients and business associates affirmed a $2 billion judgment for fraud, embezzlement, and corruption adjudicated before the International Chamber Commerce Court in Dubai. The enforcement of that judgment is currently active discovery in the Southern District of New York case no: 1:25-mc-00077 (Exhibit E). Defendant Moore's associates and clients, Sirwan Barzani owner with another Kurdistan Democratic Party family owners, Masrour Barzani, Waysi Barzani, and Mansour Barzani (DOJ Action), owned telecom group, Korek.

15. State Actor #1 had full knowledge of these federal actions, government investigations, U.S. treasury sanctions against key associates of Defendants and their representative firms, forensic expert reports outlining Defendant Moore's alleged circumvention of AML/KYC laws and obfuscating true ownership of corporations to obtain DOD section 8(a) funding through Golden Eagle Global, Inc., (defendant in multiple federal cases), yet issued protective/gag order from 2024 and issued on May 6, 2026, Order Granting Affidavit of Fees awarding Defendant $21,861.00 (Exhibit F). State Actor #1 and state agencies had full knowledge of Defendant Moore's alleged actions included in DOJ Action and other pending federal litigation, including Plaintiff's role as a federal witness.  State

actors failed to report perjured testimony by Defendants on June 18, 2026, denying involvement with defendants named in the current DOJ Action including "Contractor #1", "Contractor #2", and "Co-conspirators."

16. State Actor #1 failed to uphold federal laws and failed to refer perjured testimony to the US Attorney's office or Attorney General in the state and denied Plaintiff of protected constitutional rights under federal law. This testimony including Defendants' full knowledge Defendant Moore committed perjury on June 18, 2025, during questioning on his financial and personal association with Haval Dosky, owner of Repeat Consultants, LLC, assistant and middleman for Masrour Barzani and Mansour Barzani, one of the defendants in the DOJ Action. Dosky and his LLC group received $125 million from the Defense Logistics Agency during periods relevant to the DOJ Action. Defendant State Actor #1 refused a restatement of facts as investigations against Defendant Moore, Barzanis, and others were reported in the international press and released by the U.S. Department of Justice. Defendants Moore and Green are defendants in two federal actions related to FCPA violations committed by their clients and other associated activity in *Jamil v. Barzani, Moore, Green, et al.,* recently reopened in the Southern District of New York and transferred to Cheif Judge George Daniels case no: 1:26-cv-01654 on May 22, 2026.

17. This action challenges an overbroad protective and gag order, together with related fee and sanctions orders, entered in underlying state-court proceedings that substantially overlap ongoing federal litigation, federal discovery proceedings, and active investigations involving agencies of the United States Government. The challenged orders impermissibly restrain Plaintiff's constitutionally protected speech and expressive activity under the First Amendment to the United States Constitution, including Plaintiff's public commentary, investigative analysis, journalism, and media appearances concerning alleged corruption,

foreign transnational espionage, human-rights abuses, sanctions evasion, foreign influence operations, and fraud against agencies of the United States Government, as well as Plaintiff's cooperation with federal law-enforcement authorities and participation as a federal witness in matters of significant public concern.

18. Further, related constitutional and federal-question issues arising from overlapping proceedings are presently before the District of Columbia Court of Appeals in a pending appeal involving substantially similar restraints on Plaintiff's protected speech, federal witness activity, and access to federal judicial review. The existence of active appellate proceedings concerning related constitutional questions further underscores the substantial federal interests implicated herein and places state actors and related parties on continuing notice that Plaintiff's protected speech, commentary, and cooperation with federal authorities are matters directly intertwined with ongoing federal judicial and constitutional review. The Supreme Court has repeatedly held that speech addressing public affairs and governmental misconduct "occupies the highest rung of the hierarchy of First Amendment values, and is entitled to special protection." *See Connick v. Myers,* 461 U.S. 138, 145 (1983). Likewise, speech concerning "public issues" is entitled to "the broadest protection" under the First Amendment. See *Snyder v. Phelps,* 562 U.S. 443, 452 (2011). Prior restraints on speech are "the most serious and the least tolerable infringement on First Amendment rights;" *Nebraska Press Ass'n v. Stuart,* 427 U.S. 539, 559 (1976). Accordingly, any order restricting speech carries a "heavy presumption" against its constitutional validity. *See Bantam Books, Inc. v. Sullivan,* 372 U.S. 58, 70 (1963).

19. The Third Circuit has similarly recognized that gag orders and speech restrictions imposed through judicial proceedings are subject to the "most exacting scrutiny," particularly where the restrained speech concerns public corruption, governmental affairs, or matters of public importance. *See United States v. Scarfo,* 263 F.3d 80, 91–93 (3d Cir. 2001) (holding

9

restrictions on speech concerning pending proceedings must survive strict constitutional scrutiny and be narrowly tailored). The Third Circuit further recognizes that the First Amendment protects not only traditional journalism, but commentary, advocacy, political analysis, and criticism concerning matters of public concern and governmental integrity. Here, the challenged orders are not narrowly tailored, are substantially overbroad, and operate as unconstitutional prior restraints designed to suppress Plaintiff's reporting, commentary, authorship of a 2027 book *Despots and Demons*, interviews, analysis, and cooperation with federal authorities concerning issues of profound public importance, including alleged corruption, foreign influence activity, and misconduct presently implicated in overlapping federal proceedings, appellate proceedings, and ongoing federal investigations.

20. Plaintiff is an analyst and writer on national security, human rights, current detainment of activists and journalists in Kurdistan and Iran, women's rights in the Middle East, provides commentary on cyber and global terrorism risks and has recently appeared on podcasts and media throughout Iraq, Europe, and the United States. The protective/gag order broadly chills this speech without adequate findings of good cause or narrow tailoring and suspiciously was entered by State Actor #1 months of delay, *after* Defendants received litigation hold evidence letters pertaining to the evidence related to current federal actions and this complaint on May 1, 2026, by Plaintiffs' attorneys in the *Revend* case (Exhibit G).

**Knowledge of Federal Witness Status and Waiver of Litigation Privilege**.

21. Defendants, acting individually and through their agents, representatives, and counsel, possessed actual knowledge — documented in official court transcripts, federal filings, overlapping discovery proceedings, and related litigation — that Plaintiff is a federal witness and source of information in matters involving ongoing IRS, FBI, and other federal investigative activity concerning alleged international money laundering, sanctions evasion, violations of the U.S. Patriot Act, the Anti–Terrorism Act, the Torture Victim Protection Act,

10

fraud against the United States Department of Defense, foreign influence operations, and matters implicating national security and U.S. Treasury sanctions programs relating to the Iranian regime and associated entities.

22. Further, in the litigation arising from Iraq Telecom Limited and related Korek matters, including proceedings involving discovery directed to Dechert LLP, federal courts compelled disclosure of materials under the crime-fraud exception where evidence demonstrated that legal and corporate structures were allegedly utilized to facilitate or conceal fraudulent transactions, asset transfers, and real estate acquisition schemes. *See Iraq Telecom Ltd. v. Mustafa, et al.,* related proceedings under 28 U.S.C. § 1782 (E.D. Pa.). In those proceedings, courts rejected blanket assertions of privilege where communications and documents were alleged to have been created "as part of" or "in furtherance of" fraudulent or unlawful conduct.

The United States Supreme Court has long held that "the attorney-client privilege takes flight if the relation is abused." *Clark v. United States,* 289 U.S. 1, 15 (1933). The Third Circuit similarly recognizes that the crime-fraud exception applies where attorney communications or legal services are used to advance fraudulent conduct, conceal unlawful activity, obstruct investigations, or perpetuate fraud upon courts or third parties; *Haines v. Liggett Group Inc.,* 975 F.2d 81, 90 (3d Cir. 1992); *In re Grand Jury Subpoena,* 223 F.3d 213, 217–18 (3d Cir. 2000). Despite possessing knowledge of Plaintiff's role as a federal witness and the existence of overlapping federal investigations and sanctions-related concerns, Defendants nevertheless continued conduct intended to intimidate, retaliate against, silence, or interfere with Plaintiff through abusive litigation tactics, threats of imprisonment, coercive proceedings, and misuse of judicial process, including proceedings designed to obstruct testimony, deter cooperation with

11

federal authorities and conceal evidence relevant to ongoing federal inquiries.

23. Despite this knowledge, Defendants knowingly pursued protective/gag order and fees including other vexatious litigation not for legitimate privacy purposes, but to intimidate Plaintiff, suppress her testimony to federal agencies, and chill her public speech on matters of public concern and national security and the current DOJ Action against Defendant Moore and associates. This includes Defendants attempted obstruction of Plaintiff complying with federal subpoenas in *Iraq Telecom Limited, et al., v. Korek (Barzani)*, SDNY, actively pursuing abusive state actions in conspired efforts to obstruct Plaintiff's compliance with federal subpoenas. **Litigation privilege and attorney-client privilege do not apply.**

24. The crime-fraud exception waives any such privilege when communications or actions are made in furtherance of ongoing or future fraud, obstruction of justice, or witness tampering. The active DOJ forfeiture action, current federal investigations, and national security risks triggered by Defendants' conduct place their actions squarely outside the protection of any litigation privilege. Defendants Spoltore, Obermayer, and Green actively pursued vexatious litigation to conceal Defendant Moore and Barzani conduct at the center of the DOJ Action. Defendant Green actively represented Barzani family interest beyond the course of normal litigation including protecting Masrour Barzani's activity alleged to violate Foreign Corrupt Practices Act, and other allegations in the current SDNY and District of Columbia suits. Documents, records, and direct testimony of Defendants' perjury and knowledge of violations of federal law with attempts to obstruct and conceal evidence are included in r recorded proceedings in state court and including but not limited to the following dates.

Defendants are simultaneously agents and witnesses receiving litigation hold letters pertaining to multiple federal actions in Exhibit C. Testimony and facts presented to State Actor #1 from 2023 to the present includes:

a. October 2, 2024 hearing state court on subpoena duces tecum which include Barzani associated business and supports the DOJ Action of misuse of schemed proceeds on **MGM Resorts and Casinos, PNC Bank, Cardinal Bank, Bank of America, Golden Eagle Global, Inc. Julie Sanford GEGI Management, LLC,** (defendant in *Revend*) and possible co-conspirator associates in DOJ Action named entity Trust **NYJD Trust. Masrour Barzani, K24 Kurdistan** Barzani owned a propaganda media outlet recently appearing as a "member' of the White House Press Corps in May 2026 operated by **Valerie Cupp and Rahim Rashidi.** Cupp is a defendant in the current federal litigation in D.C. in *Revend.* Upon information and belief, NYJD represents defendant Mansour Barzani children's names and associate of Defendant Moore of Nasser, Yasser, Julia, and David. Testimony related to schemed proceeds and concealment including the purchase of a Lamborghini through **Lamborghini/Maserati of Fort Lauderdale** Defendant Moore with remitter as Mustafa Barzani orchestrated in 2021 with **Haval Dosky** co-mingling accounts to avoid AML/KYC rules in the United States. **Edward Luria, Alvord & Alvord,** administrator of **Moore & Bruce PSP,** is currently a witness to the use of DOJ Action schemed proceeds to conceal assets and organization of BVI companies now presented as evidence in the *Revend* case. L Squared Insurance Company information Defendant Moore filed false insurance claims "files and documents" were stolen. Defendants had full knowledge files were in Defendant Moore's possession and the L Squared claim was filed after Defendant Moore was sued in Revend for allegations parallel to the current DOJ Action.

b. November 19, 2024, hearing in state court on documents and files related to Defendants' businesses and corporate structures on behalf of Barzani interests. Testimony given on Defendants' knowledge of the Iraq Telecom Limited judgment as affirmed in the Eastern District of Pennsylvania. Defendants Moore, Spoltore, and associated firm Obermayer had full knowledge Defendant Moore possesses twenty years of records on Barzani, federal investigations had been underway for at least 4 years, Plaintiff's testimony to the FBI and IRS, and Plaintiff's lawyers in the *Revend* case had notified Barzani's of their intent to sue for allegations which overlap the current DOJ Action.

c. June 18, 2025, hearing in state court where Defendants' testified and presented arguments committing perjury on Defendant Moore's association or knowledge of Haval Dosky. Defendants' assertion Plaintiff's compliance of a federal subpoena in Iraq Telecom was wrong and inappropriate. Direct testimony Julie Mae Sanford, associate and assistant to Barzani defendants and Moore, handled most real estate transactions as POA relevant to the current DOJ Action involving the use of "schemed proceeds." State Actor #1 holds direct testimony of BVI trusts and other structures and layers to hold real estate are public record from county property records and news reports. Defendant Moore testified he had no knowledge of the Beverly Hills property in forfeiture by the DOJ Action for DOD fraud.

d. June 30, 2025, hearing in state court testimony State Actor #1 asserted federal investigations pending and federal suits alleging violations of money-laundering, IRS

13

avoidance and fraud, national security, Plaintiff's compliance with federal subpoenas, First Amendment rights, property purchased from schemed proceeds as alleged in the current DOJ Action, concealment of assets, ERISA fraud, and a complex matrix of structures and layers behalf of DOJ Action defendants and Defendant Moore, "not a federal question."

e. Forensic evidence and report by a former Senior Executive of the FBI and IRS on schemed proceeds and violations of the U.S. Patriot Act through Defendant Moore's use of structures and layers of organization using those schemed proceeds to acquire real estate. The verified report was presented and filed to State Actor #1 in 2023 and 2024. Defendants Moore, Green, Spoltore, and Obermayer had full knowledge the bank accounts and activities presented in the forensic report demonstrated years of tax avoidance, tax evasion, circumvention of federal laws including the U.S. Patriot Act, and other federal RICO violations.

f. Documentation through public property records and unsolicited communication to Plaintiff by real estate agents and brokers interested in acquiring property which allegedly was purchased by schemed proceeds as alleged in the DOJ Action. Plaintiff received these unsolicited text messages as Defendants Moore, Spoltore, and Green continued to encourage the use of Plaintiff's home address to support Defendant Moore's organization structures in Delaware requiring a "place of business." Plaintiff's cell phone number is associated with those structures via the primary address listed in corporate filings in Delaware and the use of Plaintiff as a ghost employee. Those text messages provided Plaintiff with complete information on real estate transacted by the alleged schemed proceeds from the DOD fraud(Exhibit H).

25. Defendants' conduct constitutes bad faith vexatious litigation and witness tampering In violation of 18 U.S.C. §§ 1512 and 1513.

**Younger Abstention Inapplicable**

26. Younger abstention does not apply to this action. Plaintiff brings a direct constitutional challenge to an overbroad gag and protective order that imposes immediate and irreparable injury upon Plaintiff's First Amendment rights and interferes with Plaintiff's protected speech, journalism, commentary, and cooperation with ongoing federal investigations and proceedings. The Supreme Court has made clear that *Younger* abstention is a "narrow exception" to the federal courts' "virtually unflagging obligation" to exercise jurisdiction conferred upon them. *See Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 77 (2013). The bad-faith and harassment exceptions to Younger squarely apply here. The Supreme Court

14

expressly recognized that federal intervention is proper where state proceedings are pursued in "bad faith" or constitute a pattern of harassment designed to chill constitutional rights. *Younger v. Harris*, 401 U.S. 37, 53–54 (1971). Plaintiff alleges a continuing pattern of retaliatory and vexatious litigation tactics intended to suppress protected speech, intimidate a federal witness, obstruct cooperation with federal authorities, and deter public commentary concerning matters of national security, foreign influence operations, sanctions-related conduct, corruption, and alleged fraud affecting agencies of the United States Government. Federal intervention is particularly appropriate where state proceedings threaten ongoing infringement of First Amendment rights. *In Dombrowski v. Pfister,* the Supreme Court held that federal courts may act where state processes are used to chill protected expression through harassment and bad faith enforcement. The Supreme Court further held that "the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *See Elrod v. Burns*, 427 U.S. 347, 373 (1976). Prior restraints on speech are "the most serious and the least tolerable infringement on First Amendment rights." See *Nebraska Press Ass'n v. Stuart,* 427 U.S. 539, 559 (1976).

27. The Third Circuit likewise recognizes that *Younger* abstention is improper where proceedings are pursued in bad faith, for purposes of harassment, or where extraordinary constitutional harms are implicated. See Lazaridis v. Wehmer, 591 F.3d 666, 670 n.4 (3d Cir. 2010); *Gwynedd Properties, Inc. v. Lower Gwynedd Twp.*, 970 F.2d 1195, 1201–02 (3d Cir. 1992). The Third Circuit further recognizes that restrictions on speech imposed through judicial proceedings are subject to the "most exacting scrutiny," particularly where the restrained speech concerns matters of public concern and governmental misconduct. *See United States v. Scarfo*, 263 F.3d 80, 91–93 (3d Cir. 2001).

Substantial federal interests also outweigh any generalized concerns of comity. The challenged state-court orders overlap active federal litigation, pending federal appellate proceedings, ongoing Department of Justice actions, and continuing federal investigations involving alleged violations of federal criminal statutes, sanctions laws, anti-corruption

15

provisions, and matters affecting national security. Under these circumstances, abstention is inappropriate where the practical effect of the challenged orders is to suppress constitutionally protected speech and interfere with participation in matters directly implicating ongoing federal investigations and proceedings.

**Count I – Declaratory Judgment (Unconstitutionality of the Orders) All Defendants.**

28. Plaintiff realleges paragraphs 1–19. The protective/gag order and May 17, 2026, fees order are unconstitutional prior restraints. *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 558 (1976); *Pansy v. Borough of Stroudsburg*, 23 F.3d 772 (3d Cir. 1994); *Publicker Industries, Inc. v. Cohen*, 733 F.2d 1059 (3d Cir. 1984).

**Count II – First Amendment Retaliation and Witness Retaliation/Tampering. All Defendants.**

29. Plaintiff realleges prior paragraphs. Defendants retaliated against Plaintiff for exercising First Amendment rights and true and accurate interviews and testimony to federal law enforcement relevant to the DOJ Action. See *Thomas v. Independence Twp.*, 463 F.3d 285 (3d Cir. 2006).

**Count III – Damages**

30. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered compensatory damages and is entitled to punitive damages.

**Count IV – Injunctive Relief and Stay of State Court Proceedings**

31. Plaintiff satisfies all factors for injunctive relief. *Elrod v. Burns*, 427 U.S. 347, 373 (1976); *Publicker Industries*, 733 F.2d 1059 (3d Cir. 1984).

**Prayer for Relief**

**WHEREFORE**, Plaintiff respectfully requests that this Court:

A. Declare the protective/gag order enforcement of May 6, 2026, fees order unconstitutional, void, and unenforceable;

B. Award compensatory and punitive damages against all Defendants; $5,000,000.00

16

C. Issue preliminary and permanent injunctive relief enjoining all Defendants from enforcing the orders or continuing vexatious litigation to suppress Plaintiff's speech or federal witness cooperation;

D. Stay all further proceedings, enforcement actions, and Prothonotary filings in the underlying state court matter, including the May 6, 2026, fees order, as these issues are already in federal jurisdiction in the U.S. Court of Appeals and the evidence before federal law enforcement;

E. Award costs, expenses, and attorney's fees under 42 U.S.C. § 1988;

F. Consolidate this Complaint with the current Writ of Replevin before Judge Christopher Burke in this Court as there exists overlapping witnesses and defendants. Plaintiff has been granted in forma pauperis to proceed in that case;

G. Grant such other and further relief as the Court deems just and proper.

H. Order the retrieval of all transcripts and CD Audio records from the state case due to the pending federal DOJ Action for referral to the U.S. Department of Justice in Washington, DC's International Unit in charge of the current DOJ Action. CD Audio was only available per court order on fees to Plaintiff and the state prohibits duplication of CD Audio recordings.

/s/ Mahtaub Moore                                         Date:/s/ May 26, 2026

1 Wood Road
Wilmington, DE 19806
M22strategies@gmail.com
703-946-3704

17